# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| MARK ANTHONY STROMAN,<br><br>  Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>  Defendant. | No. 17-CV-4049-LRR<br><br>**REPORT AND RECOMMENDATION** |

Mark Anthony Stroman ("claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Claimant contends that the Administrative Law Judge ("ALJ") erred in determining that he was not disabled. For the following reasons, I respectfully recommend that the District Court **remand** the Commissioner's decision for further proceedings consistent with this Report and Recommendation.

## I. BACKGROUND

I adopt the facts as set forth in the parties' Joint Statement of Facts and therefore only summarize the pertinent facts here. (Doc. 15). Claimant previously filed at least two applications for disability benefits, the most recent of which was denied on December 20, 2011. (AR 50-63).[1] Claimant then filed the instant application for disability insurance benefits, alleging a disability onset date of December 21, 2012. (AR 100). Claimant's last date insured was September 30, 2014. (*Id.*).

---

[1] "AR" refers to the administrative record below.

Claimant was born in 1979, making him thirty-five years old on the date he was last insured, and thirty-three years old on the alleged disability onset date. (AR 106). Claimant attended school through eighth grade, dropped out during ninth grade, and never obtained a general equivalency diploma. (Doc. 15, at 2). Claimant previously worked as a van driver, which the ALJ determined to be medium labor. (AR 106). Claimant's injuries stemmed from an all-terrain vehicle accident that occurred in approximately 2002 and caused claimant to suffer an L1 burst fracture with spinal cord injury. (AR 105). Claimant underwent L1 vertebrectomy and T12 through L2 graft fusion with placement of plate. (*Id.*). In addition to claimant's back problems, claimant alleges bowel problems "that sometimes require him to be in the bathroom for 1 to 2 hours," and that cause claimant to suffer from incontinence. (*Id.*).

The Social Security Administration denied the claim initially and on reconsideration. (AR 68-96). ALJ David G. Buell held a hearing on the matter and issued a decision denying the claim on August 22, 2016. (AR 97-108). On July 30, 2017, the Appeals Council denied review. (AR 1-3). The ALJ's decision therefore became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

Claimant timely filed the instant complaint in this Court. (Doc. 4). Claimant timely filed his opening brief on January 25, 2018, (Doc. 16), defendant timely filed her brief on February 25, 2018, (Doc. 17), and claimant timely filed his reply brief on March 7, 2018. (Doc. 19). On March 7, 2018, the Court deemed the case fully submitted and ready for a decision. That same day, the Honorable Linda R. Reade, United States District Judge, referred the case to me for a Report and Recommendation.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual has a disability when, due to her physical or mental impairments, "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. (*Id.* § 404.1572). "Gainful" activity is work done for pay or profit, even if the claimant did not ultimately receive pay or profit. (*Id.*).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. *Id.* § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. An impairment is not severe if it does "not significantly limit [a] claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. These include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple

3

instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. 404.1521 (2015).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can still do his past relevant work, then he is considered not disabled. (*Id.*). Past relevant work is any work the claimant performed within the fifteen years prior to her application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. (*Id.* § 416.960(b)). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite . . . [his] physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted). The RFC is based on all relevant evidence. The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there

is other work the claimant can do, given the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2). The Commissioner must show not only that the claimant's RFC will allow her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591. If the claimant can make the adjustment, then the Commissioner will find the claimant not disabled. At Step Five, the Commissioner has the responsibility of fairly and fully developing the record before making a determination about the existence of a disability. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. THE ALJ'S FINDINGS

The ALJ made the following findings at each step with regard to claimant's disability status:

At Step One, the ALJ found that claimant had not engaged in substantial gainful activity from his alleged onset date through his date last insured. (AR 102).

At Step Two, the ALJ found that claimant suffered from the severe impairments of "[a]nxiety disorder; and degenerative disk [sic] disease of the lumbar spine, status post fusion." (*Id.*). The ALJ further noted that "[t]he record includes evidence of carpal tunnel syndrome and bowel/bladder problems, but these occurred after the claimant's date last insured." (*Id.*).

At Step Three, the ALJ found that none of claimant's impairments met or equaled a presumptively disabling impairment listed in the regulations. (*Id.*).

At Step Four, the ALJ determined that claimant had the residual functional capacity ("RFC") to perform light work and, further, that claimant was:

Able to stoop, kneel, crouch, and crawl occasionally.

5

> Able to perform work that does not expose the worker to sustained and concentrated vibration and does not expose the worker to hazards such as work at unprotected heights.
> Able to perform work that does not require more than incidental and superficial contact with the public.
> Able to perform work that does not require working in tandem or as a partner or in close coordination with others.

(AR 104). Based on the ALJ's RFC assessment, the ALJ determined that claimant was unable to perform his past relevant work. (AR 106).

At Step Five, the ALJ found that, despite claimant's RFC, there were jobs that existed in significant numbers in the national economy that claimant could perform, including router, photocopy machine operator, and mail clerk. (AR 107). Therefore, the ALJ concluded that claimant was not disabled. (AR 108).

### IV. *THE SUBSTANTIAL EVIDENCE STANDARD*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645 (internal quotation marks omitted). The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence . . . [that] allows for the possibility of drawing two inconsistent conclusions[;] thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations and internal quotation marks omitted).

In determining whether the Commissioner's decision meets this standard, a court "consider[s] all of the evidence that was before the ALJ, but . . . do[es] not re-weigh the

evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The Court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the Court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The Court, however, "do[es] not reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the Court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the Court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the Court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The Court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

Claimant alleges that the ALJ erred by: 1) relying on the opinions of non-examining physicians instead of the opinions of treating sources and the consultative examiner; 2) finding that claimant's testimony was not credible and, further, failing to make specific credibility findings as to claimant's testimony and medical records; 3) failing to fully develop the record; and 4) determining that claimant could perform work at the light level. (Doc. 16). I will address each issue in turn.

### A. Reliance on Non-Examining State Agency Consultants

Claimant's chief argument with respect to the medical opinions the ALJ relied on is that the ALJ placed reliance on the state agency medical consultants, instead of examining or consultative sources, without fully explaining why the ALJ chose to do so. I agree that the ALJ committed reversible error in this regard.

The ALJ gave the state agency consultants' opinions "some weight," however, the ALJ failed to explain why he gave "some weight" to their opinions. (AR 104-05). The ALJ summarily stated:

> The State agency determined that claimant could do unskilled, light work other than his past jobs. . . . [The State agency consultants'] opinions are consistent with each other and with other substantial medical evidence of record. To the extent the . . . residual functional capacity findings vary from those opinions, this variation is attributable to additional evidence (including testimony at the hearing) that was not available to the State agency consultants.

(*Id.*). Missing from the ALJ's analysis is how the opinions were consistent with each other and with other substantial medical evidence of record. Further, the ALJ failed to state which opinions, specifically, were consistent with each other. The ALJ's assessment is little more than a conclusory assertion regarding the state agency consultants' opinions.

Similarly, the ALJ attributed "some weight" to the opinion of consultative examiner Dr. Michael Yung, M.D. without discussing Dr. Yung's findings or how Dr. Yung's findings were ultimately "unsupported by Dr. Yung's examination and opinion."[2] (AR 106). Although the ALJ briefly discussed claimant's subjective complaints that were made to Dr. Yung, at no point did the ALJ discuss Dr. Yung's medical opinions. (*Id.*). At most, the ALJ relayed some of Dr. Yung's objective medical findings, without relating those findings to Dr. Yung's ultimate opinion or the ALJ's decision to afford Dr. Yung's assessment "some weight." (*Id.*). Based on the lack of support for the ALJ's conclusions, I find that the ALJ did not comply with his duty to explain the weight given to those consultants offering medical opinions. *See* 20 C.F.R. 404.1527(e); *Willcockson v. Astrue*, 540 F.3d 878, 880 (8th Cir. 2008). As such, I respectfully recommend that the District Court remand the ALJ's decision for a more comprehensive assessment of the state agency consultants' opinions and the opinion of Dr. Yung.

### B. *Claimant's Credibility*

Claimant urges that the ALJ erred in not only discrediting claimant's testimony, but in failing to provide sufficient explanations for discrediting claimant and claimant's wife. (Doc. 16, at 7-9). The ALJ's discussion of claimant's credibility is as follows:

> The claimant was not a reliable source of information regarding his functioning and symptoms. . . .
> [H]is extreme allegations about bowel problems are not supported by other evidence in the record. He said he soils himself about 3 times a week and, sometimes, when he has diarrhea, this happens 3 times a day. There is no suggestion in the medical record that, even now, he has that tremendous problem.

---

[2] I note that the ALJ briefly discussed the opinions of a third medical source, Dr. Michael Baker, Ph.D. (AR 106). Claimant, however, does not challenge the weight afforded to Dr. Baker's opinions, so I will not discuss this issue other than to note that at first glance, the ALJ's discussion of Dr. Baker's opinions appears to suffer from the same deficiencies outlined above.

9

> The claimant described problems with his hip, his double vision, and his knee, but these were not treated during the time in question. Further, they are not treated now.
> He has a poor work record, which does not allow for an inference that he would be working if not for his medical condition.
> . . .
> Based on the total record, the claimant's symptoms and impairments were not as severe as alleged, and the [ALJ] has not given great weight to the claimant's implicit allegation that he was unable to engage in any and all kinds of full-time, competitive, gainful employment on a sustained basis.

(AR 105-06).

The ALJ recognized that because claimant's last date insured was some time before the hearing, the relevant time period is from the alleged onset date of disability through the date last insured, as opposed to through the date of the ALJ's decision. (AR 105). Notably, the ALJ repeatedly referred to claimant's symptoms as of the hearing date and as of the date of the ALJ's opinion. When read in context, however, it would appear that the ALJ did not consider those "present symptoms" for their substantive value, but rather considered them in weighing claimant's credibility. This alone is not improper. Claimant does not argue, and the record does not indicate, that the ALJ's finding that claimant's testimony was inconsistent with the evidence of record was erroneous. Because claimant's "present symptoms," as testified to by claimant, were only considered for their bearing on claimant's credibility, and those credibility determinations seem to be supported by substantial evidence, I do not recommend that the Court remand the ALJ's decision on that basis alone.

I will turn next, then, to whether the ALJ's determination of claimant's credibility was sufficiently supported. "'When making a determination based on [the *Polaski*] factors to reject an individual's complaints, the ALJ must make an express credibility finding and give his reasons for discrediting the testimony.'" *Reynolds v. Chater*, 82 F.3d 254, 258 (8th Cir. 1996) (quoting *Hall v. Chater*, 62 F.3d 220, 223 (8th Cir. 1995)).

The Eighth Circuit Court of Appeals has held, however, that "[a]lthough specific delineations of credibility findings are preferable, an ALJ's arguable deficiency in opinion-writing technique does not require us to set aside a finding that is supported by substantial evidence." *Id.* (citation and internal quotation marks omitted).

When taken in isolation, the ALJ's discussion of claimant's credibility seems to be on the cusp of being supported by substantial evidence, and could fall on either side of the line with sufficient consideration. There is, however, additional evidence to which the Court may turn in assessing whether the ALJ's credibility determination was supported by substantial evidence. The ALJ did not consider the following evidence strictly in assessing claimant's credibility. Rather, this information is discussed in the ALJ's recitation of claimant's alleged impairments. Nevertheless, it is entirely possible that the ALJ considered this evidence in assessing claimant's credibility but excluded this information from the credibility discussion due to subpar drafting. The Eighth Circuit has held that an ALJ's decision need not be overturned if specific delineations as to credibility are absent, so long as the credibility determination is supported by substantial evidence on the record as a whole. *Id.* I find that this is such a situation where specific credibility findings are lacking, but that the ALJ's determination is supported by substantial evidence.

At Step Two of the ALJ's analysis, the ALJ found that during the relevant time period, claimant was able to work part-time cleaning a laundromat, helped with household chores upon his wife's request, spent much of the day watching television and playing computer games, and had a driver's license and was able to drive. (AR 103). The ability to work part-time and help with household chores is inconsistent with claimant's allegations that he is unable to work at all due to his impairments and, especially, because of his irregular incontinence and "bouts of uncontrollable diarrhea." (AR 105). The ALJ clearly considered claimant's past part-time work history and claimant's allegations

11

of bowel irregularities when considering whether claimant was entitled to benefits. Claimant's ability to work part time is inconsistent with his allegedly debilitating incontinence. Likewise, claimant's ability to do household chores, even if minimal, is inconsistent with complete disability. Although the ALJ did not discuss these inconsistencies when addressing claimant's credibility, they do provide additional evidence in support of the ALJ's credibility findings. Together with the evidence the ALJ explicitly cited, I find this additional evidence constitutes substantial evidence supporting the ALJ's credibility finding. As such, I do not recommend that the Court remand the ALJ's decision solely because the ALJ failed to provide substantial evidence in support of his credibility determinations. I do, however, recommend that upon remand, the Court instruct the ALJ to make specific findings as to claimant's credibility.

Claimant also argues that the ALJ improperly discounted the statements made by claimant's wife because the ALJ did not make specific credibility findings as to claimant's wife. The entirety of the ALJ's discussion of claimant's wife's opinions is as follows:

> Similarly, the undersigned has not given great weight to the written statement of Kindra Johnson, the claimant's spouse, who completed a function report on behalf of the claimant. Out of natural concern and devotion, it is not uncommon for friends and [family] members to place unreasonable limitations on the daily activities of a loved one, or to attribute even ordinary changes in mood to an impairment, whenever illness or injury occurs. Clearly, Ms. Johnson is genuinely concerned about the claimant's well-being; however, the implicit allegation that the claimant is disabled is subject to the considerations noted above regarding the claimant's own testimony.

(AR 106). The ALJ's generalizations regarding the desire "to place unreasonable limitations on the daily activities of a loved one, or to attribute even ordinary changes in mood to an impairment" may very well be true. (*Id.*). It may even be true that Ms. Johnson has done so with respect to her assessment of her husband's impairments. The ALJ failed, however, to state that these generalizations apply to Ms. Johnson, let alone

12

give reasons for his findings that the generalizations apply to Ms. Johnson. Otherwise stated, the ALJ has made a generalized statement regarding the tendency of spouses and loved ones to exaggerate a claimant's impairments, but the ALJ has not shown that such a generalization was applicable in the instant case. Without some sort of relationship between the ALJ's generalized statement and claimant's wife, I cannot conclude that the generalization does, in fact, apply to Ms. Johnson.

I would not, however, recommend that the Court remand the case on this basis alone. Although the ALJ did not articulate any specific reason for discounting Ms. Johnson's credibility, I find that substantial evidence independently supports the weight given to Ms. Johnson's statement. For instance, Ms. Johnson's statement shows several inconsistencies with Dr. Baker's Disability Determination Services Report, which was completed approximately three and one-half months after Ms. Johnson's statement. Specifically, Ms. Johnson stated that claimant was unable to do any household chores (AR 218), while claimant reported to Dr. Baker that claimant would do chores if his wife asked him to. (AR 306). Ms. Johnson stated that claimant could pay attention for only "10-15 minutes at most" (AR 221), while claimant reported that he spent "much of the day watching TV or playing computer games," and that he had no motivation to do chores because "'[he] just keep focused on playing the games on the computer.'" (AR 306). Claimant's statement regarding his apparent ability to focus on computer games is in stark contrast to Ms. Johnson's statement that claimant could maintain his focus for only ten to fifteen minutes "at most." (AR 221). Although these are only representative examples, I find that there is substantial evidence in the record to support the ALJ giving Ms. Johnson's statement less than great weight. (AR 106). Because the ALJ has failed to provide any support for giving Ms. Johnson's statement less than great weight, however, I recommend that on remand, the Court instruct the ALJ to provide a more comprehensive discussion of the weight afforded to Ms. Johnson's statement.

13

### C.  *Duty to Fully Develop the Record*

Claimant next argues that the ALJ failed to fully and fairly develop the record because the ALJ failed to inquire as to claimant's symptoms during the relevant time period during claimant's testimony. Instead, the bulk of claimant's testimony concerned his present condition, even though the relevant time period ended two years prior. The Commissioner responds that a failure to develop the record is only reversible if the claimant meets his burden of showing that he was prejudiced or treated unfairly by the ALJ's failure to fully develop the record. (Doc. 17, at 12). The Commissioner further argues that claimant failed to meet this burden because "it was plaintiff's counsel who had an affirmative duty to act with reasonable promptness to obtain and provide the evidence needed to support [claimant's] claim." (*Id.*, at 13). In other words, the Commissioner argues that when a claimant is represented by counsel, the claimant takes on the affirmative duty of ensuring that he is not prejudiced or treated unfairly by the ALJ. The Court is confronted with two potential questions: 1) whether the ALJ had a duty to elicit testimony that would assist in deciding the case, even though claimant was represented by counsel; and 2) whether the record was fully and fairly developed. I will address the questions sequentially.

The Eighth Circuit Court of Appeals has emphasized that social security hearings are non-adversarial, and that "[w]ell-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Snead*, 360 F.3d at 838. "The ALJ's duty to develop the record extends even to cases like [claimant's], where an attorney represented the claimant at the administrative hearing." *Id*. Further, where a claimant is represented by counsel, but there is insufficient evidence in the record to reach a decision, the ALJ is under an obligation to conduct a further inquiry to discover the necessary information. *Id*. at 839. I find *Snead v. Barnhart* to be instructive here and, consequently, I find that the ALJ was

14

under an obligation to elicit whatever testimony may have been necessary to make a decision, if claimant's attorney failed to do so. The Commissioner's argument to the contrary is unpersuasive.

The next question I must address is whether the record was fully developed such that the ALJ could properly reach a decision. An ALJ's duty to fully develop the record has been met if there is "substantial evidence in the record to allow the ALJ to make an informed decision." *Haley v. Massanari*, 258 F.3d 742, 749 (8th Cir. 2001). Thus, if there is substantial evidence on the record as a whole that supports the ALJ's decision, the ALJ will have met his burden of fully developing the record. Here, I find that there was not substantial evidence sufficient for the ALJ to reach an informed decision.

Although Dr. Baker's Disability Determination Services Report, alone, does not constitute substantial evidence, it does lay the foundation for the substantial evidence standard. Dr. Baker's report recounted claimant's own statements regarding his impairments and, thus, does not appear to be biased either in favor of claimant's application for benefits or against claimant's application. Further, Dr. Baker's report provides a great deal of information on claimant's functional capabilities, such as his ability to concentrate and his ability to do household chores. The ability to do both of these activities is probative on the issue of whether claimant is disabled. This constitutes some degree of evidence upon which the ALJ could base his decision.

The ALJ also turned to Dr. Yung's consultative assessment in supporting the decision. (AR 300-03). Dr. Yung's objective assessment yielded largely normal results. The objective portion of Dr. Yung's evaluation, however, is brief. Importantly, Dr. Yung qualified many of his statements by providing that they were based upon claimant's subjective allegations. Where Dr. Yung's findings are based on claimant's subjective allegations, the findings show some level of impairment, though whether the level of impairment would be disabling is unclear. Dr. Yung's assessment, while somewhat

15

Case 5:17-cv-04049-LRR-CJW Document 20 Filed 04/24/18 Page 15 of 18

probative on the issue of claimant's disability, is ultimately of little benefit due to its brevity and lack of explanations for certain findings.

The ALJ relied almost exclusively on the opinions of Drs. Baker and Yung, both of whom primarily based their evaluations on claimant's subjective allegations. Thus, the ALJ's decision was based almost exclusively on claimant's subjective complaints, as those complaints were filtered through Drs. Baker and Yung. Although most Social Security applicants would likely be more inclined to exaggerate their alleged disabilities when making their subjective allegations, those claimants who are not learned in medicine may not realize the significance of their symptoms. Here, the ALJ based his decision, essentially, on claimant's minimally detailed subjective allegations alone. Although claimant's reports to both Drs. Baker and Yung seem to be consistent, the reports are not detailed enough to ascertain the level of activity of which claimant is capable. The reports provide an overview, but do not scrutinize claimant's abilities to the extent necessary to allow an ALJ to make an informed decision.

Based on the scant amount of evidence upon which the ALJ relied, I find that the ALJ should have questioned claimant as to his abilities during the relevant time period to a greater degree than the ALJ did. Even though the ALJ discounted claimant's credibility, this credibility determination would not necessarily apply to claimant's testimony as to his abilities during the relevant time period. Had the ALJ asked claimant such questions, claimant could have responded in a fashion that the ALJ found to be credible. Thus, the lack of credibility afforded to claimant generally does not necessarily negate the issue of the ALJ failing to ask the relevant questions. With this additional information, perhaps the ALJ could have reached a decision based on such evidence "that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645 (internal quotation marks omitted). Therefore, I recommend that the District Court

remand the case with instructions to more fully develop the record, including by holding a new hearing, if necessary.

### D. *Claimant's Ability to Perform Light Work*

The final issue I must address is whether the ALJ erred in finding that plaintiff could perform light work. Claimant argues that the ALJ erroneously found that claimant could perform light work. As a result, claimant argues, the ALJ's questions posed to the vocational expert—which were based on an individual who could perform light work—did not accurately represent claimant's limitations and, subsequently, do not constitute substantial evidence. (Doc. 16, at 11-13). Claimant does not take issue with the vocational expert's testimony or conclusions. As a result, I need only reach the preliminary question of whether the ALJ's determination that claimant could perform light work was a sound determination.

I have already found that the ALJ's decision was not supported by substantial evidence and, specifically, that the ALJ did not fully develop the record. The ALJ's determination that claimant is capable of performing light work is premised on the ALJ's consideration of the entire record, which, here, has not been fully and fairly developed. (*See* AR 104). Thus, to uphold the ALJ's finding that claimant is capable of performing light work would be to uphold a finding that is based on a faulty premise. This is not legally sound rationale. As such, I respectfully recommend that on remand, the Court direct the ALJ to reevaluate claimant's RFC based on a record that has been fully and fairly developed.

## VI. CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **remand** the ALJ's decision with instructions consistent with this Report and Recommendation.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 24th day of April, 2018.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa